Filed 4/29/14 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2014 ND 87

In regards to S.B., M.B., and B.B.

Diane Bjerke and Robert Bjerke, Plaintiffs

v.

Cory Allen Bjerke and Naomi Sterf, Respondents and Appellants

No. 20130321

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Lawrence E. Jahnke, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Sandstrom, Justice.

Diane Bjerke and Robert Bjerke, plaintiffs; no appearance.

Cory Allen Bjerke (argued) and Naomi Sterf (on brief), self-represented, 4092 Alameda Avenue NE, Albany, Oregon 97322, respondents and appellants.

In re S.B.

No. 20130321

Sandstrom, Justice.

[¶1] Cory Bjerke and Naomi Sterf appeal from a judgment awarding visitation for their three children to the children’s paternal grandparents under the grandparent visitation statute in N.D.C.C. § 14-09-05.1.  We reverse and remand, concluding N.D.C.C. § 14-09-05.1 requires deference for fit parents’ judgment as to the best interests of the children under the grandparent visitation statute.

I

[¶2] The paternal grandparents of the three minor children, born in 1996, 2008, and 2010, sued the children’s parents for grandparent visitation, alleging visitation is in the best interests of the minor children and would not interfere with the relationship between the children and their parents.  The parents have never been married.

[¶3] At the evidentiary hearing, the grandmother testified that as the oldest child was growing up, she probably spent as much time with her grandparents as she did with her parents.  The grandmother also testified their relationship is very close.  She testified she did not spend as much time with the middle child as she did with the oldest, but she did spend time with the middle child and has a very good relationship with her.  She testified that after the youngest child was born, the grandparents had a falling-out with the parents and did not get to see the youngest child as much.  They nevertheless got to know the youngest child, the grandmother testified, and she has a very good relationship with the child.

[¶4] The grandmother testified the parents stopped letting her and the grandfather see the children because the parents accused her of calling the police department and reporting them, which she denies.  She testified she never made negative comments about the parents in front of the children and is concerned about the impact on her grandchildren if the grandparents continue to be absent from their lives.  The grandfather testified similarly.

[¶5] The father testified there is tension with the grandparents and they have created “negative situations.”  He testified the two youngest children have a minimal relationship with their grandparents and the children are not suffering from their grandparents’ absence.  The father also testified court-mandated visits would only “feed fuel to the fire.”  Both parents testified the grandparents undermine their authority as parents.  The mother testified that if the situation with the grandparents is resolved, she will allow visitation with the younger children.  The father likewise testified that if the situation resolves, the children again will have a relationship with their grandparents.

[¶6] After the hearing, the court ordered extensive grandparent visitation.  The grandparents thereafter brought a contempt proceeding against the parents for allegedly failing to comply with the court’s visitation order.  After a hearing, the court refused to find the parents in contempt, but instead ordered temporary modification of visitation for the two younger children.  The court decided the contempt issue would be further addressed during the next hearing in this matter.  Since this appeal has been filed by the parents, the court has continued further contempt hearings.

[¶7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  The appeal is timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28-27-01.

II

[¶8] The parents argue the district court erred in ordering grandparent visitation under N.D.C.C. § 14-09-05.1, which provides, in part:

The grandparents and great-grandparents of an unmarried minor child may be granted reasonable visitation rights to the child by the district court upon a finding that visitation would be in the best interests of the child and would not interfere with the parent-child relationship.

A

[¶9] The parents argue North Dakota’s grandparent visitation statute, N.D.C.C. § 14-09-05.1, is an unconstitutional violation of parents’ fundamental right to rear their children.

[¶10] Rule 44, N.D.R.App.P., provides:

If a party questions the constitutionality of a statute of the State of North Dakota in a proceeding in which the state or its agency, officer, or employee is not a party in an official capacity, the questioning party must give written notice to the attorney general immediately upon the filing of the record or as soon as the question is raised.

[¶11] The parents did not notify the Attorney General about their constitutional challenge to N.D.C.C. § 14-09-05.1, and we caution that the Attorney General be given notice and an opportunity to be heard before considering the constitutionality of a statute.  
See
 
Paluck v. Bd. of Cnty. Comm’rs, Stark Cnty.
, 307 N.W.2d 852, 854 n.2 (N.D. 1981) (“[W]hen a constitutional challenge is made to a statute directly involving the prerogatives of the legislative as well as the judicial branches of government and the taxing authority of the State, it would seem that the Attorney General should be notified so that he might appear on a matter which is significant to the operation of government in this State.”).  Nevertheless, because we are construing N.D.C.C. § 14-09-05.1 to avoid a constitutional infirmity, the failure to give the Attorney General notice in these proceedings is not fatal.

[¶12] We held in 
Hoff v. Berg
 that a 1993 version of North Dakota’s grandparent visitation law was unconstitutional, stating:

As amended in 1993, N.D.C.C. § 14-09-05.1 provides grandparents of an unmarried minor must be given visitation rights to the minor child unless the district court finds visitation is not in the best interests of the minor, and visitation rights of grandparents are presumed to be in the best interests of the minor child. . . .

. . . [W]e conclude neither the Hoffs nor the Attorney General have demonstrated the State has a compelling interest in presuming visitation rights of grandparents to an unmarried minor are in the child’s best interests and forcing parents to accede to court-ordered grandparental visitation unless the parents are first able to prove such visitation is not in the best interests of their minor child.

1999 ND 115, ¶¶ 17-18, 595 N.W.2d 285.  In 
Berg
, we relied on a number of United States Supreme Court holdings.  
See
 
id.
 at ¶ 8 (citing 
Washington v. Glucksberg
, 117 S. Ct. 2258, 2267 (1997); 
Stanley v. Illinois
, 405 U.S. 645, 651 (1972); 
M.L.B. v. S.L.J.
, 117 S. Ct. 555, 564 (1996)).

[¶13] Shortly after the decision in 
Berg
, the United States Supreme Court in 
Troxel v. Granville
, 530 U.S. 57 (2000), similarly found a Washington third-party visitation statute unconstitutional as applied because the Washington court did not accord any special weight to the parent’s decisions:

[The Washington law] contains no requirement that a court accord the parent’s decision any presumption of validity or any weight whatsoever.  Instead, the Washington statute places the best-interest determination solely in the hands of the judge.  Should the judge disagree with the parent’s estimation of the child’s best interests, the judge’s view necessarily prevails.  Thus, in practical effect, in the State of Washington a court can disregard and overturn 
any
 decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge’s determination of the child’s best interests.  The Washington Supreme Court had the opportunity to give [the law] a narrower reading, but it declined to do so. . . .

. . . .

The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to [the mother’s] determination of her daughters’ best interests.  More importantly, it appears that the Superior Court applied exactly the opposite presumption. . . .

. . . .

The judge’s comments suggest that he presumed the grandparents’ request should be granted unless the children would be “impact[ed] adversely.”  In effect, the judge placed on [the mother], the fit custodial parent, the burden of 
disproving
 that visitation would be in the best interest of her daughters. . . .

The decisional framework employed by the Superior Court directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child.  In that respect, the court’s presumption failed to provide any protection for [the mother’s] fundamental constitutional right to make decisions concerning the rearing of her own daughters. . . . [I]f a fit parent’s decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent’s own determination.

. . . . 

. . . [T]his case involves nothing more than a simple disagreement between the Washington Superior Court and [the mother] concerning her children’s best interests. . . . Accordingly, we hold that [the Washington law], as applied in this case, is unconstitutional.

Troxel
, at 67-73 (citations omitted).

[¶14] The United States Supreme Court found the Washington law unconstitutional as applied, but did not consider whether the Constitution requires all nonparental visitation statutes to include a showing of harm to the child as a condition precedent to granting visitation.  530 U.S. at 73.  “Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a 
per se
 matter.”  
Id.

[¶15] After 
Berg
 and 
Troxel
, North Dakota’s legislature amended our grandparent visitation statute in 2001 to provide in part:

The grandparents 
and great-grandparents
 of an unmarried minor 
may
 be granted reasonable visitation rights to the minor by the district court upon a finding that visitation 
would be
 in the best interests of the minor 
and would not interfere with the parent-child relationship
.

2001 N.D. Sess. Laws ch. 153, § 1 (the underlined language added in 2001).

[¶16] Since the 2001 changes, we have declined to rule on the constitutionality of N.D.C.C. § 14-09-05.1 because the statute’s constitutionality had not been properly raised.  
See
 
R.F. v. M.M.
, 2010 ND 195, ¶ 26, 789 N.W.2d 723 (“The mother . . . claims the district court’s decision here is not consistent with 
Troxel
 because the court substituted its judgment on how to raise the child.  However, the mother only argues the court’s findings are clearly erroneous and are not supported by the evidence, and she does not argue the statute is unconstitutional on its face or as applied[.]”).  In this case, the parents have specifically contended the grandparent visitation statute is unconstitutional, stating, “[It] is an unconstitutional violation of a parent’s fundamental right to rear their child.”

[¶17] “Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained.”  N.D.C.C. § 1-02-02.  “When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.”  N.D.C.C. § 1-02-05.  “If the language of a statute is ambiguous, however, a court may resort to extrinsic aids, including legislative history, to interpret the statute.  
Stutsman County v. State Historical Soc’y
, 371 N.W.2d 321, 325 (N.D. 1985).  It is well established that we construe statutes to avoid constitutional infirmities.”  
Teigen v. State
, 2008 ND 88, ¶ 19, 749 N.W.2d 505.  We have also explained that there are some specific rules of construction in the context of determining whether a statute is constitutional:

Statutes and rules are presumed to be constitutional and courts will construe them to be constitutional if possible.  
Paluck v. Bd. of Cnty. Comm’rs, Stark Cnty.
, 307 N.W.2d 852, 857 (N.D.1981); N.D.C.C. § 1-02-38(1).  “[I]f a statute is susceptible of two constructions, one which will be compatible with constitutional provisions or one which will render the statute unconstitutional, we must adopt the construction which will make the statute valid.”  
Paluck
, 307 N.W.2d at 856.

State, ex rel. Roseland v. Herauf
, 2012 ND 151, ¶ 7, 819 N.W.2d 546.

[¶18] Other than minor housekeeping changes, the current version of North Dakota’s grandparent visitation statute is similar to the 2001 version and provides, in relevant part:

The grandparents and great-grandparents of an unmarried minor child may be granted reasonable visitation rights to the child by the district court upon a finding that visitation would be in the best interests of the child and would not interfere with the parent-child relationship.

N.D.C.C. § 14-09-05.1(1); 
see also
 2009 N.D. Sess. Laws ch. 149, § 3.  Section 14-

09-05.1, N.D.C.C., clearly explains the findings a district court must make prior to awarding grandparent visitation.  Nevertheless, the statute does not explicitly place a burden of proof on, or provide a presumption in favor of, either party.  It is presumed that compliance with the state and United States constitutions is intended.  N.D.C.C. § 1-02-38(1).  Therefore, when a statute is susceptible to two constructions, we adopt the construction which will make the law valid.  
Herauf
, 2012 ND 151, ¶ 7, 819 N.W.2d 546.  Moreover, because the procedures of the statute are not clear, we may look to extrinsic aids in order to interpret it.  
Teigen
, 2008 ND 88, ¶ 19, 749 N.W.2d 505.

[¶19] The Interim Judiciary Committee’s Final Report on grandparent visitation was offered as testimony during the 2001 legislative session:

The committee received testimony regarding a North Dakota Supreme Court decision, 
Hoff v. Berg
, 595 N.W.2d 285 (1999) in which the court declared a portion of NDCC Section 14-09-05.1 unconstitutional.

. . . .

The committee also received testimony regarding a recent United States Supreme Court opinion, 
Troxel v. Granville
, 
       
 U.S. 
       
, 120 S. Ct. 2054 (2000), in which the Court declared a Washington grandparent visitation statute unconstitutional. . . . According to the testimony received by the committee, the 1993 amendments to the North Dakota grandparent visitation statute would not have withstood constitutional scrutiny under Troxel; however, the now applicable 1983 statute appears to be constitutional under the Court’s analysis in Troxel.

The committee recommends Senate Bill No. 2047 to amend NDCC Section 14-09-05.1, the grandparent visitation statute, to comply with 
Hoff v. Berg
.

Hearing on S.B. 2047 Before the Senate Judiciary Committee
, 57th N.D. Legis. Sess. (Jan. 24, 2001) [“
Hearing on S.B. 2047
”].

[¶20] The interim committee study explains that the 2001 changes were necessary to ensure the constitutionality of the statute under 
Troxel
 and 
Berg
.  
See
 
Hearing on S.B. 2047
; 1983 N.D. Sess. Laws ch. 179, § 1.  Legislative history thus reflects that compliance with the United States Constitution was the apparent intent of the 2001 legislature when amending the grandparent visitation statute.  
See
 
Hearing on S.B. 2047
.

[¶21] 
Berg
 declared that the State did not have a compelling interest in presuming visitation rights of grandparents to an unmarried minor are in the child’s best interests.  
Berg
, 1999 ND 115, ¶ 18, 595 N.W.2d 285.  
Troxel
 similarly requires that “if a fit parent’s decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent’s own determination.”  
Troxel
, 530 U.S. at 70.  The problem with the Washington statute in 
Troxel
 was “not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to [the mother’s] determination of her daughters’ best interests.  More importantly, it appears that the Superior Court applied exactly the opposite presumption.”  
Id.
 at 69.  “In effect, the judge placed on [the mother], the fit custodial parent, the burden of 
disproving
 that visitation would be in the best interest of her daughters.”  
Id.

[¶22] “Statutes and rules are presumed to be constitutional and courts will construe them to be constitutional if possible.”  
Herauf
, 2012 ND 151, ¶ 7, 819 N.W.2d 546.  In light of the foregoing, we construe North Dakota’s grandparent visitation statute to mean that when a parent decides to restrict visitation with a grandparent, the parent’s decision is presumed to be in the child’s best interests.  
See
 
Hartleib v. Simes
, 2009 ND 205, ¶ 32, 776 N.W.2d 217 (“[N]othing in the statute suggests that grandparent visitation rights ‘are presumed to be in the best interest of the minor[.]’”).  To overcome this presumption, grandparents have the burden of proving grandparent visitation is in the child’s best interest and would not interfere with the parent-child relationship.

B

[¶23] The parents argue the district court erred in ordering grandparent visitation, because visitation would not be in the best interests of the children and would interfere with the parent-child relationship.

[¶24] A district court’s decision on grandparent visitation is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is not evidence to support the finding, or this Court concludes, on the basis of the entire record, that a mistake has been made.

R.F. v. M.M.
, 2010 ND 195, ¶ 17, 789 N.W.2d 723 (citations omitted).

[¶25] The father in this case testified there is tension with the grandparents and the grandparents have created “negative situations.”  He testified the two youngest children have a very minimal relationship with their grandparents and the children are not suffering by their lack of visitation with the grandparents.  The father also testified that court-ordered visits would only “feed fuel to the fire.”  Both parents testified the grandparents undermine their authority as parents.  Under our interpretation of N.D.C.C. § 14-09-05.1, a parent is presumed to act in the best interests of a child when the parent decides to limit a child’s visitation with the grandparents.

[¶26] Although the court in this case cited evidence supporting the grandparents’ position, the court did not apply the presumption that a parent’s visitation decision is in the children’s best interests.  Instead, the court found, “There has been no claim by either [parent] that [grandparent visitation] would be detrimental to them.”  The court likewise concluded that no credible evidence was presented to support the parents’ position.  The findings give no indication the court gave the parents any favorable presumption or placed the burden of proof on the grandparents.

[¶27] The district court’s explanation is similar to the reasoning the United States Supreme Court cautioned against in 
Troxel
:  “I think [visitation] would be in the best interest of the children and I haven’t been shown it is not in [the] best interest of the children.”  
Troxel
, 530 U.S. at 69.  The United States Supreme Court explained that the trial court had directly contravened the traditional presumption that a fit parent will act in the best interest of his child when the court placed on the parents a burden of disproving that visitation would be in the best interests of their children.  
See
 
id.
  
Troxel
 requires, “[I]f a fit parent’s decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent’s own determination.”  
Id.
 at 70.

[¶28] The findings do not show the court gave the parents any favorable presumption or placed the burden of proof on the grandparents.  
See
 
Kulbacki v. Michael
, 2014 ND 83, ¶ 10.  We conclude the findings were induced by an erroneous view of the law and are, therefore, clearly erroneous.

III

[¶29] The parents argue the district court gave the grandparents too much visitation.

[¶30] In ordering visitation, the district court implemented the following visitation schedule:

a. The [parents’] sixteen year old daughter . . . shall be allowed contact with her paternal grandparents as she wishes, to include overnight visits.  The younger two children shall be allowed to spend one weekend a month (Friday evening to Sunday evening) with their paternal grandparents.

b. . . . a minimum of four hours grandparental time with each of the children on his/her respective birthday. . . .

c. . . . a minimum of four hours grandparental time with each of the children on their own respective birthdays.

d. . . . a minimum of four hours grandparental time with each of the children annually on Grandparent’s Day.

e. . . .  a minimum of four hours grandparental time with the children annually on Easter Sunday.

f. During each of the summer months of June, July and August, each child shall be entitled to a 5 day period of uninterrupted time with their paternal grandparents . . . .

g. Over the Thanksgiving holiday, each child shall spend 24 hours, obviously to include an overnight, with their paternal grandparents. . . .

h. Over the Christmas holiday, each child shall spend three consecutive days with their paternal grandparents . . . .

[¶31] “A district court’s decision on grandparent visitation is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous.”  
R.F. v. M.M.
, 2010 ND 195, ¶ 17, 789 N.W.2d 723.

[¶32] Because we have already concluded the district court committed error by failing to properly protect the parents’ decision-making in this case, we will not consider whether the court likewise erred in awarding the grandparents too much visitation.  Nevertheless, because this issue may arise on remand, we address the legal limitations on grandparent visitation.  
See
 
Decoteau v. Nodak Mut. Ins. Co.
, 2000 ND 3, ¶ 26 n.2, 603 N.W.2d 906 (“Because of the resolution of this issue, the other issues raised . . . are not likely to arise on remand and any discussion of those issues would be advisory.  We therefore decline to address those issues.”).

[¶33] In 
Ackerman v. Ackerman
, 1999 ND 135, ¶¶ 14-16, 596 N.W.2d 332, we held an award to the father of visitation with his children for one weekend per month, alternating school holidays, one-half of Christmas vacation, Father’s day, the father’s birthday, and three weeks each summer was reasonable.  The grandparents have a similar award in this case.  As 
Ackerman
 demonstrates, the grandparent visitation award in this case is similar to non-custodial parent visitation.

[¶34] Grandparents do not have the same right as parents to visitation or custody of a child.  
See
 
Clark v. Clark
, 2005 ND 176, ¶ 17, 704 N.W.2d 847 (“Although the rights of parents are not absolute, [p]arents generally have a right to the custody and control of their children superior to the right of any other person. . . . Here, no best interests analysis was conducted, and we therefore have no way to review whether exceptional circumstances existed [to award visitation to the grandparents].”) (citations and quotation marks omitted).  If the district court awards grandparent visitation on remand, the visitation order should not be so significant that it is comparable to parenting time for a non-custodial parent.  
See
 
R.F. v. M.M.
, 2010 ND 195, ¶ 24, 789 N.W.2d 723 (“[E.F.], as [the child’s] biological parent, would have been given some time with the child.  [The grandfather] will receive a fraction of that amount of time.”).

 

IV

[¶35] We reverse the district court judgment and remand for the court to make findings consistent with N.D.C.C. § 14-09-05.1 as explained in this opinion.  If the district court again orders grandparent visitation, the visitation schedule should reflect grandparent visitation, not parenting time.  In addition, the record reflects that the parents have moved to Oregon since the judgment was entered in this case, and this and any other change in circumstances will need to be addressed on remand if grandparent visitation is ordered.

[¶36] Dale V. Sandstrom

Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.